# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

ELMO KIRBY, JR.                                                   PLAINTIFF

     v.                          No. 4:08CV00338 JLH

UNITED AMERICAN INSURANCE COMPANY;
UA PARTNERS; and WILLIAM W. DRAPER                    DEFENDANTS

## RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

     The following recommended disposition has been sent to Chief United States

District Judge J. Leon Holmes.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.

     Your objections must be received in the office of the United States District Court

Clerk no later than seventeen (17) days from the date you receive the Recommended

Disposition.  Failure to file timely objections may result in a waiver of the right to appeal

questions of fact.

**II.    Background:**

     Elmo Kirby, Jr., sued Defendants United American Insurance Company ("United

American"), UA Partners, and Williams Draper in connection with Mr. Kirby's purchase

of two health insurance policies and his enrollment in a program providing for discounts

with participating health care providers, such as pharmacies, dentists, chiropractors, vision care specialists, and audiologists. (#95, Defendant's Statement of Undisputed Facts, Exhibit 6) Mr. Kirby purchased the policies and enrolled in the discount program in May of 2004. (Docket entries # 2, # 19, #46).

In his Second Amended Complaint (#46), Mr. Kirby alleged that Defendants are liable to him based on: (1) breach of contract; (2) violation of the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. § 4-88-101, *et seq*.; (3) unjust enrichment; (4) common law fraud; and (5) conversion. Subsequent to the filing of the Second Amended Complaint, UA Partners was dismissed as a party defendant based on a finding that it is not a legal entity capable of being sued (#116). Later, Defendant Draper was dismissed later for lack of service of process (#133).

United American, the only remaining Defendant, now has moved for summary judgment (#93). Plaintiff has responded to that motion (#112); and United American ("Defendant") replied (#121).

In addition to its motion for summary judgment, Defendant also has moved to strike inadmissible evidence from Plaintiff's response to the motion for summary judgment (#117) and to strike Plaintiff's expert witness's affidavit from Plaintiff's response to its summary judgment motion (#119). Plaintiff has responded to the motions to strike (#125, #127), and Defendant has replied (#131, #132).

Plaintiff has filed a motion to compel discovery (#106) and a motion to strike Defendant's answer to his Second Amended Complaint as a sanction for discovery abuse (#110). United American has responded to Plaintiff's motions (# 122, #123), and Plaintiff has replied (#129, #130).

Chief Judge J. Leon Holmes, the presiding district judge in this case, referred United American's motion for summary judgment (#93); Plaintiff's motion to compel (#106); and Plaintiff's motion to strike Defendant's Answer (#110) to this Court, by order of September 30, 2009 (#116). On October 21, 2009, Judge Holmes also referred Defendant's motions to strike (#117, #119) to this Court (#134).

United American requested oral argument on its motion for summary judgment, and a hearing was held for that purpose on December 10, 2009. Mr. Kirby was represented at the hearing by his attorney, John Doyle Nalley, Esquire. United American was represented by Eric Eissenstat, Esquire and William A. Waddell, Jr., Esquire. Counsel were permitted to argue all pending motions that have been referred to this Court. Thus, all of the referred motions have been exhaustively briefed and argued.

III.   **Discussion:**

A.     **Motion to Strike Answer to Second Amended Complaint (#110)**

Mr. Kirby asks the Court to strike Defendant's Answer as a sanction, based on United American's alleged obliteration of certain language from documents the Court had ordered it to produce to Plaintiff. According to the Plaintiff, on September 10, 2009,

after Plaintiff had taken the depositions of United American's witnesses designated under Federal Rule of Civil Procedure 30(b)(6), the Defendant sent Plaintiff's counsel new copies of documents that previously had been provided, but with substantially different language. Plaintiff contends that the new, substituted documents demonstrate that the documents, as originally provided, had "critical information redacted." (#110) Plaintiff's motion to strike was based, in part, on prejudice created by the fact that the trial date was imminent, and there was insufficient time to prepare in the light of the newly revealed information.

At the December 10, 2009 hearing, United American provided side-by-side copies of the original and newly produced documents, arguing that the "new" documents were not new at all, but rather were the same documents reprinted so as to enhance readability. In the updated documents, shaded areas are legible where they were illegible in the originals. In addition, counsel for United American demonstrated that the "new" information was provided to Plaintiff in other documents.

The dismissal of a party's pleading should be imposed as a sanction only in "exceptional cases because in our justice system, the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 936 (8th Cir. 2007)(quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999) (internal quotation omitted)). Such a draconian sanction must be reserved for situations where a party exhibits "blatant disregard of the Court's

orders and the discovery rules," or "[engages] in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." *Carey*, 186 F.3d at 1022. In addition, "there is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." *Id.* at 1020.

Because the trial of this case now has been continued until May of 2010, and because the now-legible information was available to the Plaintiff in other documents, striking Defendant's answer is not an appropriate sanction, if a sanction is called for at all. United American previously has been found by this Court and by the District Court to have abused the discovery process, and sanctions were imposed accordingly. The Court is mindful of United American's past discovery abuses in this case, but the "new" information Plaintiff points to is not really new, and the information's significance is minimal, at most..

**B.    Plaintiff's Motion to Compel (#106)**

At the hearing, the parties conferred and agreed that Plaintiff's Motion to Compel (#106) was moot. Thus, that motion is no longer pending.

**C.    Defendant's Motion for Summary Judgment (#93)**

Defendant has moved for summary judgment on all claims. Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Smith v. Int'l Paper Co.*, 523

F.3d 845, 848 (8th Cir. 2008). To demonstrate a genuine issue of material fact, "[a] plaintiff may not merely point to unsupported self-serving allegations." *Smith*, 523 F.3d at 848 (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)); rather, the plaintiff "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." *Bass*, 418 at 873. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986).

      1.     Breach of Contract:

      Although the amended complaint includes a claim for breach of contract, Plaintiff's counsel conceded at the hearing that the Defendant has paid all of its obligations under the written contracts at issue in this case. Accordingly, United American is entitled to judgment on the claim for breach of a written contract.

      To the extent Plaintiff claims breach of an oral contract, such a claim would be barred by the applicable statute of limitations. In Arkansas, claims arising from oral contracts must be brought within three years after the cause of action accrues. ARK.CODE ANN. § 16-56-105(1) (Repl.2005). There is no dispute that the contracts in this case were made in 2004, and that the Plaintiff filed this lawsuit in April of 2008, more than four years after the claim accrued. Thus, any claim for breach of an oral contract is time barred.

2.     Unjust Enrichment:

United American is entitled to summary judgment on Plaintiff's claim for unjust enrichment, which is an equitable doctrine under Arkansas law. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005). Unjust enrichment is based on the premise that, "one person should not be permitted unjustly to enrich himself at the expense of another. . . ." *Id.* A claim for unjust enrichment, however, is unavailable to a plaintiff when there is an express written contract, so long as the contract fully addresses the subject of the controversy. *Id.* (quoting *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998)); but see *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir. 1999) (allowing plaintiff to drop its breach of contract claim and to assert a claim for unjust enrichment because plaintiff's recovery under unjust enrichment theory was the same as it would have been under a breach of contract theory).

In this case, the contracts fully address all of the claims at issue. Plaintiff claims he paid for the equivalent of a "major medical" policy and received fewer benefits than he thought he would receive, based on alleged representations of the agent who sold him the insurance policies and the discount program. The dispute between the parties concerns United American's failure to provide more benefits than the contracts, by their express terms, required.

3.    Conversion:

Plaintiff's claim for conversion is based his understanding that the cost of participating in the discount program was a one-time charge when, in fact, Plaintiff was charged a monthly fee for participating in the discount program.  (#46, ¶ 44)

Conversion is a common-law tort action for the wrongful possession or disposition of another's property.  In Arkansas, a plaintiff asserting a conversion claim must prove that the defendant "wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights." *C.A.R. Transp. Brokerage Co., Inc. v. Seay*, 369 Ark. 354, 359, 255 S.W.3d 445, 449 (2007) (citing *Mack v. Sutter*, 366 Ark. 1, 233 S.W.3d 140 (2006) and *Hatchell v. Wren*, 363 Ark. 107, 211 S.W.3d 516 (2005)).

It is undisputed that the cost of participating in the Defendant's discount program was not a one-time fee, but rather, was a recurring fee.  (# 95, Ex. 4)  The authorization and enrollment form explicitly sets out the cost as: $12.95 monthly; $38.85 quarterly; $77.70 semi-annually; or $155.40 annually.  (#95, Ex. 4)  Mr. Kirby does not dispute that he enrolled in the discount program; nor does he dispute that he signed the authorization and enrollment form that clearly states the cost.  No reasonable fact finder could conclude that the Defendant in this case wrongfully possessed or disposed of Plaintiff's property.  Accordingly, United American is entitled to judgment as a matter of law on Plaintiff's claim for conversion.

4.    Fraud:

Plaintiff claims that Defendant committed fraud when William Draper allegedly assured Plaintiff that the insurance policies and discount program offered essentially the same coverage as a major medical insurance policy and when Draper told Plaintiff the cost of the discount program was a one-time occurrence.

The tort of fraud, misrepresentation or deceit consists of five elements which must be proved by a preponderance of the evidence: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Wilkins v. U.S. Bank, Nat. Ass'n.*, 514 F. Supp.2d 1120, 1127 (2007) (citing *Hampton v. Taylor*, 318 Ark. 771, 777, 887 S.W.2d 535, 539 (1994)). Claims for fraud must be brought within three years in Arkansas. ARK.CODE ANN. § 16-56-105; *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 713, 120 S.W.3d 525, 532 (2003).

(a)    *Statute of Limitations*

United American contends that Mr. Kirby's fraud claims were not timely brought. There is no dispute that the Plaintiff applied for the insurance policies and discount program in May of 2004 and that he received the written contracts in June of 2004. The Complaint was filed March 13, 2008.  (# 2)

Absent fraudulent concealment of the wrong, the three-year limitations period begins to run when the wrong occurs, not when it is discovered. *Rice v. Ragsdale*, 104 Ark. App. 364, 368, 292 S.W.3d 856, 860 - 861 (2009) (citing *Stoltz v. Friday*, 325 Ark. 399, 926 S.W.2d 438 (1996)). From the face of the complaint in this case, it can be ascertained that the fraud claim was not filed within the three-year limitations period prescribed by Arkansas law.

A statute-of-limitations defense must be raised affirmatively. Once raised, however, if it is clear from the face of a complaint that a claim was not timely filed, as in this case, "the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations is tolled." *Reed v. Guard*, 374 Ark. 1, 3, 285 S.W.3d 662, 664 (2008). Fraudulent concealment tolls the statute of limitations only when defendants "have committed a positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Riddle v. Udouj*, 371 Ark. 452, 461, 267 S.W.3d 586, 593 (2007) (quoting *Hampton v. Taylor*, 318 Ark. 771, 778, 887 S.W.2d 535, 539 (1994)).

Even if fraudulent concealment is demonstrated, however, the aggrieved party also must prove that the fraud could not have been detected by the exercise of "reasonable diligence." *Delanno, Inc. v. Peace*, 366 Ark. 542, 547, 237 S.W.3d 81, 85 (2006). Thus, in order to advance his fraud claim, Mr. Kirby bears the burden of showing that United American "committed a positive act of fraud" that was "secretly

executed" so as to conceal the fraud. He also must show that, by "reasonable diligence," he could not have detected or known of the fraud. *Riddle v. Udouj* 371 Ark. at 461, 267 S.W.3d at 593 (citation omitted).

In *Rice v. Ragsdale*, 104 Ark. App. 364, 374, 292 S.W.3d 856, 864 (2009), as in this case, the plaintiffs claimed fraud based on allegedly false representations made to them by the defendants. The Arkansas Court of Appeals held that, because the plaintiffs had received information from an authoritative source that directly contradicted the representations made by the defendants, the plaintiffs were obligated, "to reconcile the contradiction by doing something other than accepting assurances by [defendants]." A person claiming fraud has an affirmative duty to make further inquiry into conflicting information. *Id* at 375, 292 S.W.3d at 865 (citing *Delanno*, 366 Ark at 548-549, 237 S.W.3d at 86-87).

Furthermore, a plaintiff alleging fraudulent concealment of a tort must show "more than a continuation of a prior nondisclosure. Rather, there had to be some proof offered which created a fact question related to a positive act of fraud." *Meadors v. Still* 344 Ark. 307, 315-316, 40 S.W.3d 294, 300-301 (2001).

In this case, Mr. Kirby's fraud claim rests entirely on his allegation that William Draper, as an agent for United American, provided untrue and misleading information about the scope of coverage and the cost of the insurance policies and discount program he sold to Mr. Kirby. Viewing the facts in a light most favorable to Mr. Kirby for

purposes of the summary judgment motion, the Court will assume that Draper misled, misinformed, and otherwise gave Mr. Kirby information and assurances that caused him to believe that he was purchasing the equivalent of a major medical health insurance policy. Unfortunately for Mr. Kirby, this assumption does not establish fraudulent concealment so as to toll the statute of limitations.

Documents in the record reveal that the written policies and discount program materials uniformly and directly contradict the representations Draper allegedly made. (#95, Ex. 4, 7, 11, 12, 13, 14) In June of 2004, Mr. Kirby had the opportunity to read the terms in the policies and discount program that conflicted with Draper's representations. There are no allegations that United American, or Draper for that matter, made any misrepresentations to Mr. Kirby after June of 2004. The unambiguous information in the written materials would have placed a reasonable person on notice that Draper's representations were false or misleading. Once those written materials were provided to him, Mr. Kirby was on notice of the alleged fraud, and he had an affirmative duty to investigate the discrepancies between Draper's oral representations and the written contracts. See, *e.g.*, *Burgess v. French,* 100 Ark. App. 51, 54, 263 S.W.3d 578, 581 (2007) (finding no fraudulent concealment, as plaintiff was not justified in relying on the disclosure form in light of other information available to him regarding the poor condition of the house he was purchasing).

The issue of fraudulent concealment is often a fact question precluding summary judgment, but when, as here, there is no evidentiary basis for such a finding, the question can be decided as a matter of law. *Bomar v. Moser*, 369 Ark. 123, 131, 251 S.W.3d 234, 241 (2007); *Delanno v. Peace*, 366 Ark. 542, 545, 237 S.W.3d 81, 84 (2006).

The Court does not reach the question of whether there was fraud in the inducement, but, beyond peradventure, there was no fraudulent concealment here. No reasonable fact finder could conclude that United American fraudulently concealed information from Mr. Kirby so as to toll the statute of limitations on the fraud claim.[1] United American is entitled to judgment as a matter of law based on the expiration of the statute of limitations.

(b)    *Justifiable Reliance*

One prima facie element of fraud is plaintiff's "justifiable reliance" on the defendant's representations. *Wilkins v. U.S. Bank, Nat. Ass'n.*, 514 F. Supp.2d 1120, 1127 (2007) (citing *Hampton v. Taylor*, 318 Ark. 771, 777, 887 S.W.2d 535, 539 (1994)). Even had Mr. Kirby's fraud claim been filed within three years, given the unambiguous language in the written documents Mr. Kirby received, he cannot demonstrate that he *justifiably* relied on Draper's representations.

---

[1] Fraudulent concealment is not a tort under Arkansas law, but rather operates as a shield to a defendant's assertion that a claim is barred by the applicable statute of limitations. See *Pate v. Central Flying Service, Inc.*, No. 4:05cv1311JMM, 2006 WL 3388340 at *1 (E.D. Ark. Nov. 21, 2006) (citing AMI Civil 4th, Intentional Torts, § 402).

Several weeks after Mr. Kirby applied for the policies and enrolled in the discount program, the policies and discount program documents were delivered to him. Those documents unambiguously set out the terms, conditions, and limitations of the insurance policies and the discount program. (#95, Ex. 4, 7, 11, 12, 13, 14) Mr. Kirby has testified that he was not aware of the applicable terms of the contracts, but rather relied on Draper's prior representations as to the terms, conditions, and limitations. (#95, Ex. 1, pp. 39, 44, 49, 52, 114-116) Mr. Kirby candidly admitted in his deposition, however, that when Draper delivered the package containing the documents, he did not read them:

> And I took it, I glanced over it and that's it. I mean, I didn't read the policy word for word. I didn't think I had to. I asked the man up front and he told me and I depended on what he told me.

(#95, Ex. 1, p. 39, lines 2-11)

Mr. Kirby argues that his testimony establishes only that he did not read the documents "word for word," and not that he failed to read them. He points out that he testified that he did "glance over" the documents when they were delivered to him in June of 2004. (Plaintiff's Brief in Support of Response to Summary Judgment, #113, p. 5-6) He argues that he "looked through the policy and the policy appeared to him to be the policy that was represented to him by [Defendant's] agent at the time of sale." (#113, p. 5)

The issue, however, is not whether Mr. Kirby is a careful reader. Liability turns on whether it was reasonable for Mr. Kirby to rely on Draper's prior representations

14

when those representations were unambiguously contradicted in the written documents he subsequently received. If Mr. Kirby were claiming that United American represented in the written documents that the policies provided certain coverage and then failed to deliver, his position would be well taken. Instead, however, the argument he implicitly makes is that a reasonable person would only have "glanced over" the insurance documents, and that such a cursory review would not have revealed that the terms of the policies were patently different from the assurances and representations made by the agent. Mr. Kirby is caught between the proverbial rock and hard place. If he read the policies, he knew the terms were significantly different from those described by Draper; if he did not read the documents, he was not reasonably diligent. The middle path that he takes, *i.e.*, that he did not read, but did "glance over" the documents, is not tenable.

Once the policies were delivered to Mr. Kirby in June of 2004, he was afforded ten days in which to mail the insurance policies back to United American, thereby cancelling the policies. (#95, Ex. 11, 12) Had Mr. Kirby read the written documents delivered to him, he would have discovered the discrepancies between Draper's representations and the written documents, and he could have cancelled the policies and received a refund of any premiums paid to that point.

Finally, had Mr. Kirby read the policies, he would have discovered the integration clause in the contracts, disavowing any terms or conditions not contained within the four corners of the written documents:

ENTIRE CONTRACT; CHANGES: This policy, with the application and attached papers is the entire contract between You and Us. No change in this policy shall be effective until approved by Us. This approval must be noted on or attached to this policy.

No agent may change this policy or waive any of its provisions.

(#95, Ex. 12, p. 7)

In *Burgess v. French* 100 Ark. App. 51, 263 S.W.3d 578 ( 2007), the Arkansas Court of Appeals upheld the dismissal of a plaintiff's fraud claims under similar circumstances because the plaintiff's reliance was not justified. In that case, plaintiff allegedly had relied on a disclosure form regarding the condition of a house he was buying. The court held that, in light of all of the other information given to him and available to him regarding the poor condition of the house, plaintiff's reliance on the disclosure form was not justified so as to support a fraud claim.

Accordingly, even had the fraud claim been filed within the applicable three year period, Mr. Kirby's reliance on Draper's representations was not "justifiable reliance," as a matter of law.

     5.     Arkansas Deceptive Trade Practices Act:

Plaintiff also sues under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Arkansas Code Annotated § 4-88-107. As originally enacted, the ADTPA was enforceable only by the Attorney General of the State of Arkansas. A 1999 amendment, however, provided a private cause of action to "[a]ny person who suffers actual damage

or injury as a result of an offense of violation as defined in this chapter." ARK.CODE ANN. § 4-88-113(f) (Repl.2001)

Unfortunately for the Plaintiff, the express language of the ADTPA provides that neither the Attorney General nor a consumer such as Mr. Kirby can bring suit under the ADTPA based on, "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner . . . ." ARK.CODE ANN. § 4-88-101(3). The policies at issue in this case are transactions administered by the state's Insurance Commissioner. In fact, Mr. Kirby apparently sought the assistance of the Insurance Commissioner in connection with the policies at issue here. (#95, Ex. 16)

The discount program was not an insurance policy, and arguably would not be "administered by the Insurance Commissioner." Mr. Kirby's complaint about this program is that United American charged a monthly fee, rather than the one-time fee Draper allegedly represented would be charged.

Even if the Plaintiff's claims about the discount program were allowed under the ADTPA, given Mr. Kirby's signature immediately adjacent to information about the recurring cost of the program, United American is entitled to summary judgment on this case insofar as Mr. Kirby claims United American overcharged him for the discount program. (#95, Ex. 4)

Mr. Kirby also claims, however, that United American misrepresented the membership of medical providers enrolled in the discount program. Specifically, he

alleges that United American inflated the number of medical providers who agreed to discount their services. He offers a list of medical providers listed by Defendant as participating providers who, he asserts, have not, in fact, contracted with Defendant to participate in the Defendant's discount program.

Mr. Kirby has submitted the affidavit of Sharon Riggan, who has worked for a number of years in medical billing. At the request of Plaintiff's counsel, Ms. Riggan surveyed providers listed as participants in Three Rivers Provider Network ("TRPN"). According to Ms. Riggan's affidavit, most of these providers told her they were not TRPN participants and that they gave no discounts to Defendant's discount program subscribers. Plaintiff argues that, "[f]alsely representing medical providers as being part of the TRPN network is both fraud and constructive fraud." (# 113, p. 7)

United American has moved to strike Ms. Riggan's affidavit (# 119) on several grounds. First, Defendant argues that Ms. Riggan's affidavit is not an "expert opinion" at all – at least not as contemplated by Rule 702 of the Federal Rules of Evidence. Defendants argue that the affidavit is not based on any specialized knowledge and states no opinion.

Second, Defendant contends that the information included in Ms. Riggan's affidavit is inadmissible hearsay. Her affidavit recites what certain medical providers told her about their participation in Defendant's discount program. Third, Defendant

18

contends that Ms. Riggan was not disclosed as an expert witness in pretrial disclosures; and fourth, Defendant asserts that Ms. Riggan did not respond to its Rule 45 subpoena.

There is also a relevancy argument based on the fact that TRPN was not a network provider for United American at any time relevant to the events giving rise to this lawsuit. TRPN apparently became a network provider for United American in 2006, after Mr. Kirby had incurred the medical expenses at issue in this lawsuit. Further, it is undisputed that Mr. Kirby never attempted to use his discount card or to discover which health care providers were included in the program. (#118, Ex. 2; #95, Ex. 1)

Mr. Kirby also attached the affidavit of Ron Sheffield, an attorney, who offered his expert opinion, based on a review of the policies and Ms. Riggan's affidavit, that, "if [Defendant] is indeed utilizing a fictitious provider network at the same time as selling this policy could easily lead an unsophisticated purchaser into believing that this policy will provide complete coverage for all of his and his family's health care needs." (#113, Ex. 2)

Defendant has moved to strike Mr. Sheffield's affidavit because he has no expertise in determining what a theoretical "unsophisticated purchaser" might "easily [be led] to believe," or what Defendant's intent or motive might be. Defendant argues that Mr. Sheffield's opinions are not relevant to the issues in this case. Defendant also objects to Mr. Sheffield's reliance on Ms. Riggan's inadmissible affidavit in forming his opinions. As with Ms. Riggan's affidavit, Defendant argues that the Sheffield affidavit

19

should be stricken from the record because Mr. Sheffield was not disclosed as an expert witness in pretrial disclosures and did not respond to its Rule 45 subpoena.

The Defendant's objection as to Ms. Riggan's affidavit are valid. While Ms. Riggan may well be an expert in medical billing, she is not apparently an expert in polling. In addition, her affidavit is based entirely on hearsay, making it inherently unreliable.

Furthermore, information about TRPN's alleged bad acts may be of concern to state regulators, but it has marginal relevance to this case. Even if the Court were to assume the truth of the statements in the Riggan affidavit, it would be of little help to Mr. Kirby that United American contracted with a company with questionable business practices after Mr. Kirby incurred the medical expenses at issue in this case. For these reasons, the Riggan affidavit must be stricken from the Plaintiff's response.

Mr. Sheffield, in turn, based his opinions on the Riggan affidavit. This compounds the hearsay problem and renders Mr. Sheffield's opinions inadmissible. Furthermore, the opinions expressed, even if considered, could not save Plaintiff's claims. Unscrupulous insurance contracts are a concern of the Arkansas Insurance Department, but Mr. Sheffield's complaint that the contracts at issue in this case "could easily lead an unsophisticated purchaser" to misunderstand the scope of insurance coverage is not helpful to Plaintiff's case.

Defendant's motions to strike from Plaintiff's response the unauthenticated hearsay internet materials (#117) upon which both affidavits are based should be granted. Likewise, both affidavits should be stricken from the Plaintiff's response. Both motions to strike (#117, #119) have merit and must be granted.

Even were the Court to consider these materials is assessing Plaintiff's claims, Defendants would still be entitled to summary judgment because, as set out above, the three-year statute of limitations bars the fraud claim.

**IV.    Conclusion:**

Plaintiff's Motion to Strike Answer (#110) should be denied; his Motion to Compel (#106) should be denied, as moot. Defendant's Motions to Strike (#117, #119) should be granted, and its Motion for Summary Judgment (#93) should be granted as to all Plaintiff's claims.

DATED this 22nd day of January, 2010.


_____
UNITED STATES MAGISTRATE JUDGE